**TAVERNS FOR TOTS, INC., Plaintiff,**

v.

**CITY OF TOLEDO, et al., Defendants.**

**No. 3:04 CV 7030.**

United States District Court,
N.D. Ohio,
Western Division.

March 1, 2004.

Steven C. Hales, Lydy & Moan, Sylvania, OH, for Taverns for Tots, Inc., Plaintiff.

Adam W. Loukx, Barbara E. Herring, City of Toledo, Department of Law, Toledo, OH, Keith A. Wilkowski, Vassar, Dills & Dawson, Toledo, OH, for City of Toledo, Jack Ford, Mayor, Defendants.

## ORDER

CARR, District Judge.

This is § 1983 case arising under the First Amendment to and Due Process and Equal Protection Clauses of the Federal Constitution. The plaintiff, Taverns for Tots, is an Ohio not-for-profit corporation. Plaintiff claims that the defendants City of Toledo, Ohio, and its Mayor, Jack Ford, have violated the plaintiff's constitutional rights by enactment and enforcement of the Toledo's Clean Indoor Air Act of 2003.[1]

Plaintiff initially filed suit in the Lucas County, Ohio, Court of Common Pleas. The defendants removed the case to this court. Thereafter defendants filed a counterclaim, asserting, *inter alia*, that the plaintiff is a sham corporation, created to help area bars and restaurants evade the strictures and enforcement of the anti-smoking ordinance. The City contends that, in view of this purpose, Taverns for Tots is not a bona fide charity, and, as a result, cannot claim the benefit of any exemption in § 1779.04 of the ordinance in favor of not-for-profit corporations.[2]

---

1. Ordinance 509–03, codified at Toledo Mun. Code § 1779.01 *et seq.* The ordinance amends an earlier ordinance (T.M.C. § 1779.01 *et seq.*, enacted 1987). Both enactments restrict smoking in enclosed public places.

2. Section 1779.04 requires entities seeking exemptions to apply for and be granted such exemption. Procedures have been implemented for the City's Division of Environmental Services to review and grant or deny such applications.

The defendants have filed a motion for preliminary injunctive relief to prevent plaintiff and its associated bars and restaurants from holding "events" at which smoking is permitted in violation of the ordinance. Following issuance of a temporary restraining order in defendants' favor, a hearing on defendants' motion for a preliminary injunction was held on February 5, 2004.[3] For the reasons that follow, defendants' motion for a preliminary injunction will be granted.

## BACKGROUND

This case follows an earlier suit, *D.A.B.E. Inc. v. City of Toledo*, 292 F.Supp.2d 968 (N.D.Ohio 2003), in which several owners of bars and restaurants in Toledo raised a constitutional challenge to the facial validity of the anti-smoking ordinance. That constitutional challenge, brought under the Constitution's Takings Clause, was unsuccessful. *Id.*

In the instant case, plaintiff claims that the ordinance infringes associational rights under the First Amendment and asserts that procedures for obtaining exemptions, as provided in the ordinance for "membership associations" and "private social functions," T.M.C. § 1779.04, violate due process and equal protection. This court has jurisdiction under 28 U.S.C. § 1331.

At the hearing on defendants' motion for preliminary injunction, two witnesses, Royal Barber and William Delaney, testified about the formation, purpose, and operation of Taverns for Tots. Mr. Barber is an accountant whose clients include some of the bar and restaurant owners who were among the plaintiffs in the *D.A.B.E.*

suit, *supra*. The plaintiffs in that suit claimed that the anti-smoking ordinance had caused severe adverse financial consequences, because many of their patrons preferred to go to establishments outside Toledo where smoking is permitted. Mr. Barber is also a director of the Northwest Ohio Restaurant Association. Mr. Delaney owns Delaney's Lounge, a tavern in Toledo.

Mr. Barber testified that he and Jeff Bollin, owner of The Bier Stube,[4] a bar in Toledo, initially conceived of Taverns for Tots as a charity to raise money for the benefit of needy children. (Tr. at 30, 38.) Mr. Barber and Mr. Delaney testified, however, that Taverns for Tots was formed primarily and substantially to enable smoking in bars and restaurants by taking advantage of the exemptions in the ordinance for not-for-profit corporations and private social functions. (Tr. at 38, 109, 123). Taverns for Tots was created on or about December 20, 2003, as a postponement in the City's enforcement of the ordinance to enable bar and restaurant owners to construct enclosed smoking areas in their establishments, as permitted under the ordinance, was expiring.

The "members" of Taverns for Tots are bar and restaurant patrons who, on entering one of those establishments, pay a one dollar lifetime membership fee, are issued a membership card, and are enrolled on a register of members kept at the establishment. Persons who decline to pay or have not paid the membership fee are denied service and asked to leave the premises. In this manner, only "members" are pres-

---

The City also contends that regardless of the alleged bona fides of the plaintiff, it is not entitled to the benefits of the exemptions which it asserts because it has not, as the ordinance requires, either filed an application or been granted an exemption under the exemption provisions the ordinance.

3. Plaintiff has filed a cross-motion for preliminary injunction. Supplemental briefing on that motion has been held in abeyance pending the outcome of the instant motion.

4. The Bier Stube was a named plaintiff in the *D.A.B.E.* litigation Mr. Barber is the Bier Stube's accountant. (Tr. at 30.)

ent when functions, called "events," are held under the auspices of Taverns for Tots. Such "events" occur whenever the participating bars and restaurants are open for business.

In addition to raising money from the membership fee, Taverns for Tots receives contributions from participating bar and restaurant owners. These contribute on a monthly basis either one percent of their gross profits or $150. The individual "members" (i.e., the customers) can, if they wish, also donate more than their one dollar membership fee.

Taverns for Tots was formed on December 20, 2003, and under its aegis "events" (which were deemed to be occurring whenever the premises were open for business) were held and smoking occurred at about thirty-five to forty establishments on a daily and nightly basis until issuance of the temporary restraining order on January 27, 2004.

That order did not bar Taverns for Tots from operating or soliciting charitable contributions: it simply prohibited violations of the Toledo Clean Indoor Act at functions held in the name or under auspices of the plaintiff.

In the interim between its formation and issuance of the restraining order, Taverns for Tots sought to enable bar and restaurant owners who either decided not to build enclosed smoking areas or who were unable, due to financial, space, or other limitations, to do so, to continue to permit their patrons to smoke. In this manner, the organizers and entities that supported Taverns for Tots accomplished, for about five weeks at least, their primary purpose—to evade Toledo's anti-smoking ban.

The undenied and undeniable primary purpose of Taverns for Tots raises, without more, serious questions about the organization's bona fides. The organization's failure to abide by several basic corporate formalities which charitable organizations incorporated for legitimate purposes normally implement, makes the plaintiff's claim to legitimacy even more dubious.

As Mr. Barber testified, Taverns for Tots has no officers, no written minutes of Board of Directors[5] meetings, no criteria for or obligations of "membership" (aside from payment of the one dollar fee), no written contracts or agreements with participating bars or restaurants, and no control over the putative "events" held daily and nightly in its name. Actions taken on behalf of Taverns for Tots, such as employment of its counsel and filing of this suit, were undertaken without prior notice to the directors. These actions have not been ratified by written resolution. (Tr. at 30–44, 50, 54, 71, 73, 88, 100).

Those failings aside, Taverns for Tots, though it purports to have adopted internal operating procedures, denominated as its "Events Protocol," has disregarded or failed to implement many of the protocol's provisions. No mechanism exists to determine whether bars and restaurants are, in fact, complying with the "members only" requirement, either by collecting the one dollar fee or ensuring that only "members" are allowed on and served at the premises. Mr. Barber, though acting as de facto treasurer for the plaintiff, did not know how many or which bars had thus far remitted their participant fee. (Tr. at 49–50.). Though he has received monies from participating bars and restaurants, those

---

**5.** Royal Barber, Steven Hales, and Karen Baker–Zepf are the directors of Taverns for Tots. Ms. Baker–Zepf, who is affiliated professionally with Mr. Barber, did not participate as a director until shortly before the injunction hearing. Mr. Steven Hales, counsel for plaintiff corporation, has represented bars and restaurants, and is handling this case on behalf of Taverns for Tots.

funds have not been segregated by source (i.e., membership fees, bar contributions, or other donations).

No determination has been made about disbursing the funds, or even about how that determination will be made. No children's charities have been selected as beneficiaries. No procedures for their selection have been adopted. Taverns for Tots has no procedures whereby prospective beneficiaries, either individual or institutional, can enquire about or apply for grants. To the extent that money collected by the plaintiff has been spent, it has gone to the costs and fees associated with this litigation.

The "Event Protocol," which ostensibly sets some minimal operational standards, has not been formally ratified and largely has been ignored. The protocol includes no procedures for enforcing its putative standards and requirements. The criteria for approving or disapproving "events" held in the name of Taverns for Tots at bars and restaurants have not been implemented or enforced.

As Mr. Delaney testified, the only difference in his operations since creation of Taverns for Tots is that he now must make sure his bar collects the one dollar "membership fee" from anyone not already in possession of a Taverns for Tots "membership card" (which Mr. Delaney consistently referred to as a "ticket") before his customers are served. (Tr. at 102–03.) No one from Taverns for Tots must either be aware of, present at, or in control of the nightly "events." Thus, nothing other than entirely self-regulated verification of membership (or collection of the membership fees) must occur for the proprietor to be deemed to be conducing a Taverns for Tots "event." (Tr. at 102, 125–26, 132–35). Whether, in Mr. Delaney's absence, his employees (much less, other bar and restaurant owners) are as attentive as he to collecting the membership fee, or confirm-

ing its prior payment, and subsequently remitting the amounts so collected, is a matter of unverifiable conjecture.

## STANDARD OF REVIEW

The purpose of a preliminary injunction is to determine whether sufficient evidence supports preliminary equitable relief. *See Adams v. Federal Express Corp.*, 547 F.2d 319 (6th Cir.1976). In deciding whether to issue a preliminary injunction, a district court must consider:

> (1) whether the moving party has a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable injury without the injunction; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*National Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir.2003) (citing *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir.2000)). These four considerations are factors to be balanced, not prerequisites that must be met. *Id.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985)). A district court is not required to make findings concerning each of the four factors if fewer factors are determinative of the issue. *Id.*

## DISCUSSION

### A. Likelihood of Success on the Merits

At issue is whether defendants are likely to succeed on their contention that Taverns for Tots is a sham, and thus not entitled to claim the benefits that otherwise would accrue from its not-for-profit status, in relation to the anti-smoking ordinance. For the reasons that follow, I find that defendants have established a substantial likelihood of success on this issue.

Section 1779.02 of the Toledo Municipal Code prohibits smoking in "eating establishments" and "bars," excluding portions to which "members of the general public are not normally invited." A "public place" is defined in § 1779.01(p) as "that portion of any enclosed indoor area to which members of the general public are invited or in which members of the general public are permitted." Section 1779.01(j) defines "members of the general public" as "shoppers, customers, patrons, . . . and other similar invitees of any establishment . . . ."

Section 1779.04(a)(1) provides an exemption for "[a]n entire room or hall which is being used by a membership association or for a private social function, provided that the event is *under the control of the sponsor* of the function, *[and] the general public is not invited.*" (emphasis added). A "private social function," though otherwise not defined, cannot occur in a place where "members of the general public are invited or in which members of the general public are permitted."

Section 1779.01(k) defines a "membership association":

a not-for-profit entity which has been created or organized for a charitable, . . ., or other similar purpose and which is registered with the division of environmental services in accordance with the rules of the division. In determining whether such entity is a 'membership association,' the division of environmental services shall consider, but need not be limited to, the following factors:

(1) whether it has by-laws or a similar governing instrument and whether such by-laws or similar governing instrument expressly provides for members;

(2) whether it has established permanent and identifiable membership selection criteria, the purpose of which is to screen potential members on a basis related to its charitable, philanthropic, educational, political, social or other similar purpose;

(3) whether it conducts elections to select its governing structure and/or body;

(4) whether the premises within which it is located are controlled by its membership;

(5) whether it is operated solely for the benefit and pleasure of its membership;

(6) whether it expressly acknowledges the acceptance of members, such as by sending a membership card or by the inclusion of a member on a membership roster.

The City has implemented procedures for applying for an exemption under § 1779.04. Taverns for Tots has apparently begun the application process pursuant to those procedures, but brings this action to declare those procedures unconstitutional. In essence, plaintiff claims that its not-for-profit status and pending exemption application automatically enable it to "sponsor" "events" at participating bars and restaurants at which "members" can smoke, so long as patrons who enter without a membership card either purchase a one dollar lifetime membership or are not allowed onto the premises.

The City asserts that Taverns for Tots does not, and by implication, never could qualify for the "membership association" or "private social function" exemption because it is a sham organization created to evade the anti-smoking ordinance.

■ I agree that the City can look behind the plaintiff's corporate form, and properly and lawfully conclude that Taverns for Tots does not qualify as a not-for-profit corporation entitled to an exemption under its ordinance.

■ Under Ohio law, the corporate form of a for-profit corporation may be disregarded upon proof that: ..

(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Assoc., v. R.E. Roark Companies,* 67 Ohio St.3d 274, 289, 617 N.E.2d 1075 (1993).

■■ This test, commonly referred to as the *Belvedere* test,[6] has been refined by subsequent decisions that make clear that no actual fraud or illegality is required to disregard the corporate form; it is enough if "the acts would lead to unfair or inequitable consequences." *Stypula v. Chandler,* 2003 WL 22844296, at * 3 (Ohio App., Nov. 26, 2003) (citing *Wiencek v. Atcole Co., Inc.,* 109 Ohio App.3d 240, 244, 671 N.E.2d 1339 (1996)). This principle derives from the statement in *Belvedere* that the corporate form:

like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded ... and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the share-

holders to hide behind the fiction of the corporate entity.

67 Ohio St.3d at 287, 617 N.E.2d 1075.

There is nothing, therefore, unusual or unfamiliar about disregarding the corporate form where that form has been created or is being implemented to abuse the protections or privileges that form provides. This most typically occurs either where shareholders misuse the corporate structure for personal benefit or advantage, *see, e.g., Bucyrus–Erie Co. v. General Products Corp.,* 643 F.2d 413 (6th Cir. 1981), or where a parent corporation, as the alter ego of a subsidiary company, is not entitled to avoid liability for the subsidiary's misdeeds, *see, e.g., Carter–Jones Lumber Co. v. LTV Steel Co.,* 237 F.3d 745 (6th Cir.2001), or its obligations, *see, e.g., Pledger v. United States,* 236 F.3d 315, 321 (6th Cir.2000).

■ This case does not involve "piercing the corporate veil" in the conventional sense to impose liability on a shareholder or parent corporation. There is, however, no reason not to apply the principles underlying the veil-piercing doctrine where a not-for-profit corporation, despite its putative or even partially eleemosynary purposes, pursues unlawful or otherwise unacceptable objectives. In such circumstances, the law and sound public policy support withholding the benefits that otherwise would flow from not-for-profit status.

The benefit that should be withheld in such circumstances is the ability to use the

---

**6.** *Belvedere* overturned the stricter test set forth in *North v. Higbee Co.,* 131 Ohio St. 507, 3 N.E.2d 391 (1936), which had required actual proof that the corporation was *formed* in order to perpetrate a fraud. The court in *Belvedere* opined that the *North* standard was "too strict," since "corporations formed for legitimate purposes can easily be later used to commit fraud or other wrongs." *Belvedere,* 67 Ohio St.3d at 287–88, 617 N.E.2d 1075.

The court opined that in most cases, "it would be unreasonably difficult to prove that any corporation was actually *formed* in order to perpetrate a fraud." *Id.* (emphasis in original).

.In this case, the evidence shows conclusively that Taverns for Tots was actually formed in order, as Mr. Barber stated, to "solve the smoking ban problem." (Tr. at 38.)

not-for-profit corporate form to enable the corporation to accomplish its ostensible charitable objectives in a manner involving unlawful conduct. What occurs in conventional veil-piercing cases is equally appropriate here—namely, a determination that the corporate structure is invalid and, as to its unlawful purposes, inefficacious

In the conventional case, this means imposing liability where it is sought to be avoided through reliance on the corporate form. Here, a determination that the corporate structure is not bona fide means barring Taverns for Tots from the benefits of the exemption given to bona fide not-for-profit organizations under the anti-smoking ordinance. Neither the City nor this court can, must, or shall ignore the reality concealed beneath the not-for-profit form adopted by Taverns for Tots.

As the ordinance makes clear, only not-for-profit entities qualify for exemption under the ordinance. For-profit businesses cannot apply to be exempt. For this reason, no doubt, bar and restaurant owners who want to make it possible for their customers to smoke eschew seeking exemptions on their own behalf. Despite their claims of losses to the point of unprofitability, those proprietors are, and remain in business to make money. They believe, and their belief can be accepted as accurate for purposes of this opinion, that they will be able to make more money if their patrons can smoke. They fear losing customers and thus income to establishments in communities adjacent to Toledo if they must comply with the smoking ban ordinance.

Creation of a not-for-profit entity is thus an essential first step toward achieving the overriding goal of being open to people who smoke. So Taverns for Tots was formed shortly after this Court upheld the lawfulness of Toledo's anti-smoking law. That objective is, however, unlawful, and contrary to public policy, as expressed by Toledo's City Council.[7]

When viewed in the light of its principal objective—to permit smoking (while, to be sure, generating some funds along the way for charitable purposes)—the flaws in the corporate form adopted by Taverns for Tots are particularly telling. As noted above, Taverns for Tots holds no formal board meetings, keeps no records, makes no resolutions, does not keep track of its memberships, and maintains no corporate protocols to ensure fulfillment of objectives and avoid service to non-members.

It is also fair to infer that the amount of contributions raised at the nightly "events" is very modest. The one dollar membership fee, a non-recurring, one-time one dollar "donation" will in time become an insignificant source of revenue. Most of the funds generated thus far come from that fee and the monthly "contribution" of the bar and restaurant owners. Other contributions by patrons would appear to be minimal at most.

Thus those who stand to benefit the most from Taverns for Tots not-for-profit status (if an exemption were to be obtained) are the bar and restaurant owners who pay the most, and whose payments,

---

7. The Summary and Background to the Ordinance provides:

In 1987 the City of Toledo enacted the Clean Indoor Air Ordinance, which restricted smoking in work places and public places including restaurants. Since the passage of that ordinance, scientific evidence has demonstrated the harmful effects of exposure to secondary tobacco smoke.

Further, the majority of citizens of the City of Toledo are non-smokers who are annoyed and offended by secondary tobacco smoke. This ordinance will further restrict smoking in public places to areas which are entirely enclosed.

(available at *http://w ww.ci.toledo.oh.us/images/071503cleanairord.pdf*) (Accessed February 26, 2003).

assuming they continue after this decision, will make up most of charity's income.

Another fair inference from the record before the court is that the bar and restaurant owners are willing to make their monthly payments because they believe that the income they will gain from having customers who smoke will exceed those monthly payments. Hedging on this obligation, Taverns for Tots, which initially required a one percent monthly contribution from all participating bars and restaurants, altered that requirement to permit the optional $150 monthly payment, which likely reduces the contribution of many of the proprietors.

The fact and amount of the proprietors' payments and the option of paying the lesser amount (and thereby retaining a greater portion of the profits engendered by having smoking customers) are self-help devices that inure to the benefit of the bar and restaurant owners rather than the children who are the plaintiff's putative beneficiaries.

Aside from its manifestly unlawful basic purpose—to permit smoking where otherwise it could not occur—Taverns for Tots has no idea to whom it will contribute its funds, or how or when it will do so. It has no control over its members or the sponsors of the thousand or so "events" held monthly in its name at the thirty or forty or so taverns and restaurants where only its "members" are admitted and served. And it asks nothing of those "members" except the most nominal "membership fee" imaginable: one dollar for life.

The myriad deficiencies in form, function, and fundamental purpose defeat any claim that Taverns for Tots is a bona fide charity. Together, these attributes show persuasively that this organization exists not primarily to raise funds for needy children, but to evade the strictures and consequences of the anti-smoking ordinance. Fund raising is incidental, and giving money to children is ancillary to the plaintiff's main objective—to facilitate evasion of the ordinance, and thereby to protect and increase the profits of some Toledo bar and restaurant owners. They, not children, are the clearly intended and real beneficiaries of the corporation's not-for-profit status.

Under these circumstances, the law not only permits, it compels withholding the benefits of that status. In this case, that means withholding the benefit of an exemption under the ordinance.

That there is nothing novel in disregarding the corporate facade where it has been adopted to conceal unlawful activities is apparent from cases involving sham bingo operations, formed as charities for the specific purpose of avoiding Ohio's no-gambling laws. *See, e.g., State ex rel O'Brien v. Pathfinder Serv. Assoc.*, Case No. 02AP–305, 2003 WL 1699868 (Ohio App., Mar. 31, 2003) (unpublished) (nuisance action against organization claiming to be an educational or charitable organization, for violating Ohio's gambling laws by selling bingo cards and having slot machines and games of chance; court looked behind facade of educational and charitable purposes); *Children's House v. Celebrezze*, Case No. CA90–06–059, 1991 WL 12146 (Ohio App., Feb. 4, 1991) (unpublished) (affirming Ohio Attorney General's refusal to issue charitable bingo license to organization, finding that it had failed to qualify as a charitable organization because it, *inter alia*, paid compensation to bingo game operators, paid rent in excess of statutory limits, and made incorrect or false statements on license applications, all in violation of Ohio law).

Other examples of courts casting a cold eye on false fronts include sex club cases from other jurisdictions. *See Recreational Developments of Phoenix, Inc. v. City of Phoenix*, 83 F.Supp.2d 1072, 1084

(D.C.Ariz.1999) (ostensibly private club allowing live sex acts and observation of such acts was not private, as it was open to anyone who purchased a membership fee for as little as a dollar); *People v. A Business or Businesses Located at 2896 West 64th Avenue*, 989 P.2d 235, 238–39 (Colo.App.1999) (nude spa house not a private club where "the only qualification for membership was being a man over 21 years of age who was willing to sign or initial the application" and pay the required membership fee); *Hendricks v. Commonwealth*, 865 S.W.2d 332, 333–35 (Ky.1993) (nude dancing establishment, though a nonprofit corporation charging its customers a membership fee, was not a private club where its prior mode of conducting its business was otherwise unchanged).[8]

Like these organizations, Taverns for Tots does not meet any conventional definition of a "private" club or association or bona fide not-for-profit corporation. It has, accordingly, no standing to seek an exemption as such under the Toledo anti-smoking ordinance.

In summary, the evidence at the preliminary injunction hearing and the supplemental briefing support the following findings of fact: 1) Taverns for Tots was formed primarily to facilitate violations of the Toledo's smoking ban; 2) compliance with the corporate formalities, to the extent even attempted, has been at best nominal; 3) the organization has not formally adopted internal protocols regulating its operations and those of its members and affiliated bars and restaurants, and, to the extent that it has done so informally, it has to a considerable extent not followed or enforced those protocols; and 4) the plaintiff has exercised no control over "events" held in its name, though such control is expressly required by the § 1779.04(a)(1).

 Given these findings, it is clear that Taverns for Tots does not qualify for any exemption under the ordinance, and thus, "events" held in its name and under its aegis have violated (and would continue to violate, if not enjoined) the ant-smoking ordinance.[9]

I find, accordingly, that defendants have established a substantial likelihood of success on the merits of their counterclaim. This factor weighs strongly in favor of granting injunctive relief.

---

8. Each of these three cases analyzes the claims under the multi-factor test set forth in *United States v. Lansdowne Swim Club*, 713 F.Supp. 785 (E.D.Pa.1989), to determine whether a club is private or public. The factors are: 1) the genuine selectivity of the group in the admission of its members; 2) the membership's control over the operation of the establishment; 3) the history of the organization; 4) the use of the facilities by non-members; 5) the purpose of the club's existence; 6) whether the club advertises for members; 7) whether the club is a profit or non-profit organization; and 8) the formalities observed by the club. *Id.* at 796–97.

 Under these factors, considering the evidence presented at the hearing, it is clear that Taverns for Tots would not qualify as a private club.

9. Were I not to conclude that Taverns for Tots is a sham corporation, I would still conclude that the City has a substantial likelihood of prevailing on the merits. It is never proper to use a legitimate corporate form for unlawful purposes. In other words, even if Taverns for Tots were not a sham entity, formed to facilitate evasions of the law, I could still restrain unlawful acts—i.e., smoking at "events" held under its sponsorship and for its benefit. Microsoft, a clearly legitimate business enterprise, cannot violate the law, even though it otherwise is entitled to retain its status as a valid corporation, *see, e.g., United States v. Microsoft Corp.* 253 F.3d 34 (D.C.Cir.2001) (holding Microsoft liable for federal antitrust violations). Similarly, even if Taverns for Tots were a bona fide charity, its fund-raising could not be accompanied by violations of the law.

## B. Irreparable Injury

■ The City claims that irreparable harm will be caused to the health and welfare of other patrons at places of eating establishments and bars if plaintiff continues to frustrate enforcement of its ordinance. The City also asserts that irreparable harm will arise from tolerance of a sham as transparent as that implemented by the plaintiff, because tolerating such activities would necessarily induce others to disregard the City's laws and efforts to enforce those laws.

Plaintiff seeks to avoid injunctive relief by arguing that if environmental tobacco smoke ("ETS") was as harmful to nonsmokers as perceived by Toledo's City Council, the ordinance would not contain any exemptions, whether for enclosed smoking lounges, membership associations, or private social functions. Plaintiff seeks to argue that the harm to which its affiliated bars and restaurants expose its "members" is negligible in comparison to that created under the exemptions within the ordinance.

I reject that contention. I take note of the undisputed testimony about the public health risks from second hand smoke in *D.A.B.E., supra.* The fact that the City allowed a relatively brief period for owners to comply with the "smoking lounge" provision of the ordinance is not a basis for disregarding that evidence, or for not finding that others will be harmed if the ordinance is not enforced.

■ The fact that the ordinance exempts such functions as wedding recep-

tions, periodic fund-raising events for bona fide charities, and gatherings of members of truly private organizations, is not a basis for finding that there is no public safety risk to ETS exposure. That a law admits of exceptions does not negate the purpose and efficacy of the law as it applies to those situations identified and targeted by the drafters as most likely to expose persons in need of protection to the harm the law addresses.[10]

I conclude that withholding injunctive relief would result in immediate and irreparable injury to those whom the law seeks to protect. This factor weighs strongly in favor of granting such relief.

## C. Balance of Harm to Others

■ The risk of harm to Taverns for Tots should an injunction issue in favor of the City is negligible at best. An injunction preventing Taverns for Tots and those associated with it from permitting smoking in violation of the ordinance at its so-called "events" does not, in any recognizable way, affect Taverns for Tots' ability to continue in its charitable efforts.

Nothing about the requested injunctive relief prevents plaintiff or its members and participants from raising money for charitable purposes or otherwise carrying on any charitable activities. All that is barred is that, to the extent that such activities occur in bars and restaurants covered by the ordinance, smoking in violation of the ordinance is not allowed. Taverns for Tots can continue to exist, function, and raise funds for children's charities. That less money might be

---

**10.** Similarly flawed is plaintiff's argument that the fact that the City has not yet targeted other membership organizations, such as "fraternal order of Elks, Eagles, the Veterans of Foreign War Posts, the Toledo Club, country clubs, yacht clubs, and other such establishments" (Doc. 14, at 3), somehow proves that the ordinance is not justified, or that the City's enforcement efforts are somehow sus-

pect under the Equal Protection Clause. Under longstanding Supreme Court precedent, the City is not required to proceed against all offending businesses at once. *See Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955) ("[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.").

raised if the ordinance is enforced is not a basis for finding that any harm to plaintiff outweighs the manifest harms that will result if the ordinance is not upheld and enforced.

Furthermore, I find that failure to issue an injunction would cause harm to those bar and restaurant owners who have chosen not to violate the ordinance. According to the City's website, at least forty-one Toledo bars and restaurants have constructed separate smoking lounges under § 1779.05 of the ordinance. *See http://www.ci.toledo.oh.us/images/mayor/020304occupancies.pdf* (accessed February 25, 2004). If an injunction is not issued, their efforts and willingness to comply with the law will be penalized. Absent enforcement of the ordinance against Taverns for Tots and its affiliated establishments, these forty-one bars and restaurants will suffer from having chosen to obey the ordinance. The same is true for those proprietors who have chosen to be smoke-free entirely.

Further, injunctive relief in favor of the City has the possibility of benefitting the non-smoking population of Toledo, including the employees of the bars and restaurants, which would not continue to be subject to the harmful effects of ETS in bars and restaurants holding Taverns for Tots "events."

The harm to Taverns for Tots from an injunction is slight. The harm to others from not granting injunctive relief would be substantial. The balance of harms weighs strongly in favor of granting injunctive relief against Taverns for Tots.

### D. Public Interest

■ The public has a substantial interest in the enforcement of valid ordinances that protect public health. Further, the public also has an interest in ensuring that those proprietors who are not participants in Taverns for Tots and otherwise are seeking to comply with the law and bear its burdens are encouraged in their efforts and willingness to do so. Abiding by the law should not be penalized.

Neither the municipality nor this court can or should abide further evasion of the law at the expense of those who chose to obey it. To do so would be to serious damage the public's confidence in the integrity of the judicial system and rule of law.

This factor weighs strongly in favor of granting injunctive relief to the City.

### CONCLUSION

■ In summary, I find, on balance, that consideration of the pertinent factors overwhelmingly favors injunctive relief enforcing the City of Toledo's Clean Indoor Air Ordinance of 2003.

It is therefore

ORDERED THAT

1. Defendants' motion for a preliminary injunction be and same hereby is granted;

2. Taverns for Tots, Inc., its directors, officers, employees, agents, members, and all persons or entities acting in concert with, in the name of, or under either the aegis or actual or putative sponsorship of Taverns for Tots, Inc., including but not limited to establishments such as "bars" and "eating establishments," as defined in Toledo Municipal Code § 1779.01, and their owners, directors, officers, and agents and others acting in concert with them or on their behalf, be and hereby are enjoined and restrained from permitting smoking at their "events" or other activities held by, in conjunction with or furtherance of Taverns for Tots, Inc., or in the name of or under aegis of Taverns for Tots, Inc., in violation of Toledo's Clean Indoor Air Ordinance of 2003, T.M.C. § 1779 *et seq.*, unless and until Taverns for Tots, Inc., applies for and is granted an ex-

emption as a "Membership Association" or otherwise pursuant to § 1779.04 of the ordinance, and is certified as exempt from the ordinance by the City of Toledo Division of Environmental Services;

3. Counsel for Taverns for Tots shall cause a copy of this order to be served forthwith on the owner or proprietor of each bar or restaurant that has paid or has become obligated to pay to Taverns for Tots, Inc. the monthly contribution of its affiliated bars or restaurants; confirmation that such service has been effectuated and of the manner, time, and place of such service, including the identity of the person on whom service was made, shall be filed with the Clerk of this Court not later than 4:00 p.m., Monday, March 15, 2003; and

4. A scheduling conference is set for March 22, 2004, at 11:00 a.m., to review further proceedings and such other matters as shall be called to the Court's attention.

So ordered.