IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3697

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES N. RILEY,

Defendant-Appellant,

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

July 29, 1992

Before HIGGINBOTHAM, DUHE, Circuit Judges, and HUNTER[1], District
Judge

EDWIN F. HUNTER, JR., District Judge:

Defendant was indicted on one count of possession of cocaine,
in violation of Title 21, United States Code, § 844(a), and one
count of possession of a firearm by a convicted felon, in violation
of Title 18, United States Code, § 922(g)(1).  He was found "not
guilty" as to Count I (possession of cocaine) and "guilty" as to
Count II (possession of a firearm by a convicted felon).[2]    He

_____

[1]  Senior District Judge of the Western District of Louisiana
sitting by designation.

[2]  Presently, Riley has completed his 10 month incarceration
sentence and is now on 3 years supervised release.

challenges the district court's denial of his motion to suppress the evidence obtained by the warrantless entry of his residence and the subsequent search. Finding no error, we affirm.

I.

FACTS

The police officers were aware that a drug deal had been set for Sunday night at 9:00 o'clock p.m. They knew that deal had been arranged from a house at 8233 Curran Boulevard in New Orleans.[3] The house was placed under surveillance.

After twenty to thirty minutes, officers observed Terry Moore leave the house. He was carrying a white bag. Two officers previously assigned to watch the house followed as he drove to the LaQuinta Motor Inn where the drug deal was to be consummated. Moore was arrested on a drug charge. The white bag contained cocaine. He informed the officers that there was a large sum of money, a gun, and another person in the house at 8233 Curran Boulevard. Defendant was the lessee of the residence at that site.

Armed with the fact that Moore possessed cocaine, the gun and money information furnished by Moore, and the cellular phone which Moore possessed, the commanding officer dispatched anywhere from six to nine police officers to 8233 Curran Boulevard to "secure the residence." The officers forced opened the front door. Appellant

_____

[3] At oral argument, the government stated that the officers listened in on the conversation when informant made the call to the house on Curran Boulevard. The officers heard the informant and someone named Terry discuss an imminent drug transaction. It is noteworthy that the record does not support such particulars. The record does support that the officers knew the deal had been set up from that residence.

was in the bedroom.  A protective sweep of the house was conducted. Riley was detained pending investigation and advised of his <u>Miranda</u> rights.

The officers prepared to procure a search warrant.  Riley informed that a search warrant was not necessary; that there was nothing inside the residence, and that the officers were free to search.  The officers assured his voluntary consent to the warrantless search of his house by having Riley sign a "Permission for Search and Seizure" form.[4]  This form was witnessed by two NOPD officers.  After consent was given, the officers found, in Riley's residence, $14,000 and a gun hidden under a waterbed mattress, and a small amount of cocaine in a bathrobe.

Resolution of defendant's motion to suppress requires us to address two separate issues: first, whether the entry and internal securing of the premises constituted an impermissible seizure; second, whether the subsequent written consent to search was voluntary.

---

[4]     The form reads in pertinent part:

". . . . PERMISSION FOR SEARCH AND SEIZURE
. . . . IN ORDER TO COOPERATE WITH . . . .
I AM GIVING THIS WRITTEN PERMISSION To these police officers freely and voluntarily without threats or promises having been made to me and after having been informed by these officers that I have the right to refuse to permit this search and seizure.  It is my desire to assist them the extra time it would take to obtain a search warrant, and for this reason I have given my consent.

/s/  Charles N. Riley"

3

## II.

### The Warrantless Entry

Defendant insists that the officers' initial entry into the residence without a warrant was violative of his Fourth Amendment rights, and that, any evidence discovered during the subsequent search should have been suppressed as "fruit" of this illegal entry. Riley also argues that the Permission for Search and Seizure was not freely and voluntarily given. The district judge concluded that there was probable cause to secure the home and valid consent to conduct the search.

In reviewing the ruling on the motion to suppress, this Court must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. United States v. Muniz-Melchor, 894 F.2d 1430, 1433-34 (5th Cir.1990), cert. denied, _____ U.S. _____, 110 S.Ct. 1957 (1990); See also United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989)(Evidence viewed in light most favorable to the party prevailing below).

A warrantless entry into a home to effectuate a search or seizure is presumptively unreasonable. See Payton v. New York, 445 U.S. 573, 586-87, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). The "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972); U. S. v. Capote-Capote, 946 F.2d 1100 (5th Cir.1991). We recognize that individual interests outrank

4

government convenience in Fourth Amendment balancing. But, we hasten to add that exigent circumstances may justify a warrantless entry. See Minnesota v. Olson, 495 U.S. 91, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990). Because a warrantless search is presumed to be unreasonable, the Government has the burden of proving that the warrantless search was conducted pursuant to an exception. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Here, the police had abundant probable cause to believe that there was a criminal drug operation being carried out from Riley's house. The only issue is whether exigent circumstances existed to justify the warrantless entry.[5] Courts have catalogued numerous situations in which exigent circumstances exist. But the final answer must be applied carefully to the individual factual scenario. Relevant factors for a determination of exigent circumstances include: (1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) a reasonable belief that contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the contraband's possessors know police are on their trail; and (5) the ready destructibility of the contraband. See United States v.

---

[5] Arguably, the wiser course might have been to secure the premises from the outside while waiting for the warrant. But, the entry made here does not require a different result under the Fourth Amendment. The "heightened protection we accorded privacy interests is simply not implicated where a seizure of premises, not a search, is at issue." Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 3388, 82 L.Ed.2d 599 (1984).

<u>Vasquez</u>, 953 F.2d 176, 180 (5th Cir.1992); <u>United States v. Capote-Capote</u>, 946 F.2d 1100, 1103 (5th Cir.1991)(listing examples of exigent circumstances that may justify warrantless entry); <u>United States v. Thompson</u>, 700 F.2d 944, 948 (5th Cir.1983), affirmed on appeal after remand, 720 F.2d 385 (5th Cir.1983); <u>United States v. Reed</u>, 935 F.2d 641, 642 (4th Cir.1991).[6]

Officers were aware of the impending deal which Moore finalized. They knew that he had set up the "deal" from 8233 Curran Boulevard. They observed Moore leave 8233 Curran Boulevard. He was carrying a plastic bag; he was arrested. Moore advised the officers that there was a large sum of money, a handgun and another individual at the residence he had just left. Sergeant Cimino, with 13 years experience with the NOPD narcotics, concluded that there was a good probability that the fruits, instrumentalities and evidence of a narcotic trafficking crime would be found in the house. He realized that Moore possessed a cellular phone. He believed that, since the house had not been secured, the appellant could arm himself and/or destroy or remove contraband in the time that it would take to procure a warrant. It was a Sunday night. The warrant would not be fast coming.

The presence of a cellular phone indicated to the officers that Moore was going to report back and failure to call back or return would alert the other occupant that something had gone wrong. See <u>United States v. Espinoza-Seanez</u>, 862 F.2d 526, 538

---

[6] The need to invoke the exigent circumstances exception is particularly compelling in narcotic cases because of the ease, with which they may be destroyed.

(5th Cir.1988)(Court noted that jury could have decided that the presence of cellular phone are the "tools of the trade" of a drug dealer); See United States v. Wulferdinger, 782 F.2d 1473, 1476 (9th Cir.1986)(Fact that one's failure to return might cause those inside to dispose of any evidence can be considered when determining exigent circumstances). Sergeant Cimino was influenced by the fact that Moore had cocaine in his possession. Surely he was justified in his belief that there was a great probability that drugs would be found. The need to preserve evidence that may be lost or destroyed if a search is delayed is and has long been a consideration in determining the existence of exigent circumstance. United States v. Johnson, 802 F.2d 1459, 1462 (D.C. Cir.1986); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)(The destruction of evidence presents the requisite exigency). Courts should consider "[t]he appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers." United States v. Wysocki, 457 F.2d 1155, 1160 (5th Cir.), cert. denied 409 U.S. 859, 93 S.Ct. 145, 34 L.Ed.2d 105 (1972); United States v. Socey, 846 F.2d 1439, 1446 (D.C. Cir.), cert. denied, 488 U.S. 858, 109 S.Ct. 152, 102 L.Ed.2d 123 (1988).

The gun is a factor. See United States v. Reed, 935 F.2d 641 (4th Cir.1991)(lists an array of cases which substantiate that presence of a gun can justify warrantless entry). Sergeant Cimino feared that in the time incurred to obtain a warrant the occupant could arm himself with the gun. A man with a gun could endanger

7

the police in setting up a perimeter surveillance.

Two other factors that are noteworthy. The drug deal was on Terry Moore's terms. Prior to Sunday, the investigation did not entail the house at 8233 Curran Boulevard. It had only been under surveillance for twenty to thirty minutes when Moore exited the residence. The officers left the house unattended. Time was of the essence. The mandible delay incident to obtaining a warrant sometimes must yield to the need for immediate action. They had no idea of what might develop. The officers certainly had a reasonable belief that: 1) a person occupied the private dwelling in question; 2) the occupant would become aware of the investigation because of the implications of the cellular phone; 3) the occupant could thus arm himself with the gun; and 4) drugs could be found and/or destroyed. This was all weighed against the time delay necessitated to procure a warrant. Such delay in securing a warrant in a large metropolitan center on a Sunday night unfortunately is not uncommon.

We are not prepared to say under the limited circumstances of this case that the seizure was unreasonable under the Fourth Amendment.

III.

Was the Consent to Search Voluntarily

Appellant insists that the consent to search was not given freely and voluntarily. Counsel suggests that it was only an acquiescence to an inevitable situation by virtue of the

8

overwhelming presence of the police in appellant's home.[7]

The voluntariness of consent must be determined by an examination of the totality of the circumstances. United States v. Davis, 749 F.2d 292, 294 (5th Cir.1985). "Where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." Florida v. Royer, 103 S.Ct. 1319, 1324 (1983); See United States v. Lopez, 911 F.2d 1006, 1010 (5th Cir.1990), citing to Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973)(It must be shown that the consent was not given "simply in acquiescence to a claim of lawful authority"). Proof of a voluntary and effective consent must be proven by a preponderance of the evidence. United States v. Hurtado, 905 F.2d 74, 75 (5th Cir.1990). There are many factors to be considered. This Court has previously announced certain ones:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence, and (6) the defendant's belief that no incriminating evidence will be found. United States v. Galberth, 846 F.2d 983, 987 (5th Cir.1988), cert. denied, 488 U.S. 865.

The record reveals that an officer informed Riley that the

---

[7]    Appellant makes two arguments with respect to the consent issue. The aforementioned and also that the illegality of the initial entry was not so attenuated to dissipate the taint. We need not address this issue because of our finding that the initial entry was not a violation of his constitutional rights.

police were going to seek a search warrant.  The record reveals that Riley voluntarily consented to the search.  The consent was the intervening factor which detoured the procurement of a warrant. The officers advised Riley of his <u>Miranda</u> rights.  The consent was given in surroundings familiar to Riley, as opposed to the police station house. Riley demonstrated at the suppression hearing that he had sufficient intelligence to read and understand the search and seizure form.[8]

### Conclusion

We are persuaded that sufficient exigency existed to justify the warrantless entry by the police, and that the subsequent consent to search was valid.

The conviction and sentence are affirmed.

---

[8] The district court concluded that Appellant signed the form and that it had been signed before the search was conducted and that he did so voluntarily. The district court was entitled to make these conclusions based on his perception as to witness credibility.  Absent clear error, we accept the district court's findings.