ROARK & HARDEE L.P. d/b/a the Warehouse Saloon and Billiards; Bill Hardee; 219 L.P. d/b/a 219 West; Paul Silver; Dei Gratia, Inc. d/b/a the Elysium; John Wickham; Pub Draught, Inc. d/b/a Lovejoys Tap Room and Brewery; Joseph (Chip) Tait; Beerland; Randall Stockton; Tennia B. Brown d/b/a Horseshoe Lounge; GMC Investment, Inc. d/b/a Ego's; Canary Roost, Inc; Canary Hut, Inc; Gail E. Johnston; Sheena Semmler; Keep Austin Free Pac; Tony Sirgo; Edward Check; RPM Dining, Ltd. d/b/a the Yellow Rose; and Mike Persinger, Plaintiffs,

v.

CITY OF AUSTIN, Defendant.

No. A–05–CA–837–SS.

United States District Court, W.D. Texas, Austin Division.

Oct. 18, 2005.

Marc A. Levin, Potts & Reilly, L.L.P., and Brian Walter Bishop, Gray & Becker, P.C., Austin, TX, for Plaintiffs.

Lynn E. Carter, City of Austin Law Department, Austin, TX, for Defendant.

## *ORDER*

SPARKS, District Judge.

BE IT REMEMBERED on the 11th day of October 2005, the Court called the above-styled cause for a hearing on Plaintiff's Motion for Preliminary Injunction, which was filed on September 16, 2005, before it was removed to this Court on September 26, 2005. At the close of the hearing, the Court granted the parties leave to file additional briefing or evidence regarding this motion. Having considered the motion, Defendant's response, the supplemental evidence and briefing filed by the parties, the arguments of counsel at the hearing, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

Plaintiffs filed this lawsuit in the 98th Judicial District of Travis County, Texas on September 16, 2005, seeking declaratory and injunctive relief. Defendant City of Austin ("City") removed the case to this Court on September 26, 2005.[1] On October 3, 2005, this Court held a hearing on Plaintiffs' Request for a Temporary Restraining Order but issued no ruling, choosing instead to schedule an evidentiary hearing on the Preliminary Injunction for October 11, 2005. Plaintiffs seek to have this Court enjoin the City from enforcing Austin City Code Chapter 10–6, "Smoking in Public Places" (the "ordi-

---

1. The City asserted that the federal constitutional claims were the basis for the removal.

nance" or "smoking ordinance") until such time as the Court can rule on the merits of Plaintiffs' declaratory judgment action which seeks to invalidate the ordinance in its entirety. Pls.' Orig. Pet. Decl. J., TRO, & Inj. Relief [# 7].

The smoking ordinance challenged by Plaintiffs resulted from a ballot initiative passed on May 7, 2005. It is obvious from reading the ordinance that its simple purpose is to protect persons in public places and employees in their occupational environments from second-hand smoke. The City is in a unique defensive position in this case because the ordinance was written and passed by means of a voter initiative and not by the city council.[2] The ordinance, which took effect on September 1, 2005, generally prohibits smoking in all enclosed public places in Austin including bars, restaurants, and workplaces, subject to a few very limited exceptions.[3] Austin City Code Ch. 10–6.

### Analysis

■■■ The Court is vested with full discretion to determine whether to grant a preliminary injunction and its scope. *See Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944) ("An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determination of courts of equity."). For this Court to exercise its discretion and issue a preliminary injunction, Plaintiffs must prove: (1) a substantial likelihood of Plain-

tiffs' success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) the threatened injury to Plaintiffs outweighs the injury to the defendant; and (4) granting the injunction does not disserve the public interest. *Cherokee Pump & Equip., Inc. v. Aurora Pump,* 38 F.3d 246, 249 (5th Cir.1994). A preliminary injunction is an "extraordinary remedy" that should not be granted unless a party demonstrates the above four factors by a "clear showing." *Valley v. Rapides Parish Sch. Bd.,* 118 F.3d 1047, 1051 (5th Cir.1997).

Plaintiffs' everything-but-the-kitchen-sink-style original petition asserts that declaratory and injunctive relief should be granted pursuant to the First, Fifth, and Fourteenth Amendments of the United States Constitution; U.S. CONST. art. VI, cl. 2; 28 U.S.C. § 2201; 15 U.S.C. § 1331; 42 U.S.C. § 1983; 42 U.S.C. § 2000cc; federal common law; TEX. CONST. art. I, §§ 6, 8, 10, 19; TEX. CONST. art. XI, § 5; TEX. CIV. PRAC. & REM.CODE §§ 37, 110; TEX. LOC. GOV'T CODE § 101; TEX. PEN.CODE §§ 6.01(A), 12.23, 48; TEX. TAX CODE § 154; state common law; and City of Austin Charter Art. IV, VI, and VII. The Court will discuss in detail below the grounds for which Plaintiffs brought forth evidence in their preliminary injunction hearing. As to the other grounds, the Court will not enjoin the ordinance based on a record that does not show any substantial likelihood of success on the merits of those claims.

---

**2.** Because the ordinance was enacted by the voters, the City Charter provides that "an ordinance so adopted may be repealed or amended at any time after the expiration of two (2) years by favorable vote of six (6) members of the council." Austin City Charter art. IV, § 6. Because of this limit on the power of the City Council to presently amend the ordinance, the City is in the position of defending the ordinance "as is" even though they did not draft or enact it.

**3.** The limited exceptions include dwelling units, hotel or motel rooms, retail tobacco stores, nursing homes, outdoor areas of workplaces, bingo facilities, fraternal organization facilities, and businesses issued a restricted permit by the city on or before November 2, 2004. Austin City Code § 10–6–3.

## Vagueness

■ Plaintiffs' primary basis for relief asserted at the preliminary injunction hearing is that the ordinance is unconstitutionally vague on its face because it is so indefinite that it does not give fair notice as to what conduct is prohibited and lacks explicit standards for enforcement. *See* Pls.' Orig. Pet. Decl. J., TRO, & Inj. Relief [# 7] at 16. The Fifth Circuit employs a two-part void-for-vagueness test when evaluating criminal laws. *United States v. Escalante*, 239 F.3d 678, 680 (5th Cir.2001) (*citing City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality)). Vagueness may invalidate a criminal law for either of two reasons: (1) "it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits;" or (2) "it may authorize and even encourage arbitrary and discriminatory law enforcement." *Escalante*, 239 F.3d at 680.

The City has argued this Court should look to the ordinance as a whole and the context in which it was drafted to determine whether it is unconstitutionally vague. *See Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (holding that the phrase "tends to disturb" the peace in a city noise ordinance was not unconstitutionally vague). The Supreme Court pointed out in *Grayned* the difficulty of picking out a few disputed terms to claim that an ordinance should be held void: "It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'" 408 U.S. at 110 n. 15, 92 S.Ct. 2294 (*quoting Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 412, 70 S.Ct. 674, 94 L.Ed. 925 (1950)).

Consequently, the Court concluded that the noise ordinance was not unconstitutionally vague, stating that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' but we think it is clear what the ordinance as a whole prohibits." *Grayned*, 408 U.S. at 110, 92 S.Ct. 2294 (internal citations omitted).

■ Plaintiffs identify several words and phrases in the ordinance as too vague. Pls.' Menu Provs. Challenged [# 13]. At the hearing, the Court heard specific evidence concerning the terms "smoking," "smoking accessory," and "necessary steps" from both parties. The City has encouraged the Court to view these terms in the context of the entire ordinance and to consider the interpretations of them set forth by the City and its enforcement arm, the Health and Human Services Department. As discussed above in reference to *Grayned*, this Court will view the terms at issue in relation to the entire ordinance and not in isolation. The Court also finds that it may consider the interpretations offered by the City and its enforcing departments in evaluating the ordinance for vagueness. *See Grayned*, 408 U.S. at 110, 92 S.Ct. 2294 (instructing that a court must extrapolate the allowable meaning of an ordinance by looking to "'the words of the ordinance itself,' to the interpretations the court below has given to analogous statutes,[4] and, perhaps to some degree, *to the interpretation of the statute given by those charged with enforcing it*") (emphasis added and internal citations omitted); *Hill v. City of Houston*, 789 F.2d 1103, 1107 (5th Cir.1986) (in reviewing the facial

---

4. Unfortunately, this ordinance has not yet been construed by any state court, and the Court has not been presented with any lower court decisions that meaningfully assist it in making its determination as to whether it is unconstitutionally vague.

validity of a city ordinance the court considers "whether there is a substantial likelihood that the ordinance *as interpreted by the City* will deter constitutionally protected conduct. In deciding this, we look not only to the words of the ordinance but the *manner in which the City has construed it."*)[5] (emphasis added).

■ As to the term "smoking," the ordinance states "SMOKING means inhaling, exhaling, burning, or carrying any lighted cigar, cigarette, pipe, weed, plant, or other combustible substance in any manner or in any form." Austin City Code § 10–6–1(8). The City presented several witnesses including David Lurie, the Director of the City of Austin Health and Human Services Department, and Korina Moore, a health educator in the same department, who testified that the City does not and will not construe the ordinance to apply to candles, incense, wood, or food preparation devices such as barbeque pits. The City contends that "smoking" under the ordinance applies to smoking by persons who inhale, exhale, burn, or carry lighted tobacco or tobacco-like products, such as marijuana or herbs, that have traditionally been smoked by persons. Def.'s Prelim. Inj. Letter Br. at 6; Def.'s Resp. Pls.' Req. TRO at 9—10. Although the definition of "smoking" could certainly be more precise, the Court finds the City's interpretation of that term to be reasonable and does not find the definition to be so imprecise that it does not provide notice of what conduct is prohibited. Any reading of the entire ordinance will inform a reasonable person that the ordinance is intended to ban smoking, primarily of tobacco, in public places. The Court is not convinced that the term "smoking" read in context and in

conjunction with the City's proffered interpretation is unconstitutionally vague.

■ Secondly, the Court heard evidence from Plaintiffs that the term "necessary steps" is unconstitutionally vague because it does not inform owners and operators of public places what steps they must take to comply with the ordinance. The ordinance says, "The owner operator of a public place commits an offense if the person fails to take necessary steps to prevent or stop another person from smoking in an enclosed area in a public place." Austin City Code § 10–6–2(E). The City proffered testimony from David Lurie, both at the hearing and by affidavit, that enforcement based on the "necessary steps" language was administered exactly the same as under the previous smoking ordinance, which used the term "reasonable steps." Def.'s Resp. Pls.' Req. TRO, Aff. David Lurie. The previous Austin smoking ordinance effective on or before May 4, 2004, provides "[t]he owner or operator of a public place commits an offense if the person fails to take reasonable steps to prevent or stop another person from smoking in an enclosed area in a public place." Pls.' Orig. Pet. Ex. 6 § 6–6–2(E).

The City Health and Human Services Department has released a publication titled "Smoking in Public Places Ordinance No. 050303–05, Frequently Asked Questions (FAQs)" to address the meaning of "necessary steps" which states in part: "Necessary steps include no smoking signs, absence of ashtrays, asking the patron to stop smoking, asking the patron to leave the establishment if they refuse to stop smoking and following your standard business practices for enforcing house rules." Def.'s Resp. Pls.' Req. TRO, Aff.

5. The *Hill* court points out in dicta that the City of Houston had not suggested any limiting interpretation of the ordinance that the court might use, but rather had insisted on

the validity of the ordinance as literally read. 780 F.2d at 1111. In contrast, the City of Austin has offered a limiting interpretation of the smoking ordinance as discussed herein.

David Lurie, Ex. 1. These five discrete steps provide business owners with precise guidance about what efforts they must make to comply with the ordinance. Because the City interprets "necessary steps" to mean "reasonable steps" and proposes to enforce the ordinance only against owners or operators who fail to take "reasonable steps," as precisely laid out in their publication, the Court will not enjoin enforcement of the ordinance on this basis.

■ Finally, the term "smoking accessory" is challenged by the Plaintiffs as unconstitutionally vague. The ordinance does not specifically define "smoking accessory," but the term is used as follows: "The operator of a public place and an employer shall remove any ashtray or other smoking accessory from a place where smoking is prohibited." Austin City Code § 10–6–8(C). The most common example of a smoking accessory the City offered was an ashtray, but other items regularly used in the act of smoking, such as pipes, hookahs, or items that effectively become ashtrays through their regular use during smoking (e.g., empty candle holders or cups), would also qualify as smoking accessories. The City's interpretation of the term is reasonable and passes constitutional vagueness muster in this Court's opinion. Likewise, the Court is not convinced that the term "smoking accessory" is so vague that ordinary people would not understand what is prohibited or that it would lead to arbitrary or discriminatory enforcement of the ordinance.

Because the Court does not find Plaintiffs have shown a substantial likelihood of succeeding on the merits with any of their facial vagueness challenges, particularly in light of the City's proffered interpretations, the Court will not enjoin the ordinance based on Plaintiffs' vagueness challenge.[6]

**First Amendment**

■ Plaintiffs allege that the ordinance violates the First Amendment by compelling owners and operators of businesses to speak against their will, by banning certain forms of tobacco advertising, and by violating the right to free exercise of religion by banning the burning of incense. Of course it is clear that there is no constitutional right to smoke in a public place. *See Rohde v. City of Austin,* 124 Fed.Appx. 246 (5th Cir.2005) (affirming the decision of this Court which held that smoker failed to state a First Amendment claim upon which relief could be granted). Plaintiffs presented no evidence at the hearing that the smoking ordinance has infringed or is likely to infringe upon any person's freedom of worship.[7] The City expressly disavowed that the ordinance covers the burning of incense or candles and stated that it would not enforce the ordinance to ban these activities. Because Plaintiffs presented no useful evidence on this issue or any of their First Amendment challenges, the Court finds they have not proven a substantial threat of irreparable harm if the injunction is not granted, nor does the Court see any substantial likeli-

6. The Court wishes to clarify that any unconstitutional applications that may arise under this ordinance can easily be tested in the courts of Texas on an as-applied basis in the context of criminal proceedings initiated by the City.

7. Plaintiffs did submit one affidavit of a citizen who is a practicing Catholic in Austin who attends services in Austin at which in-

cense is burned. Aff. Edward Check Attach. Pls.' Orig. Pet. Decl. J., TRO, & Inj. Relief. Mr. Check expressed concern that a ban on burning incense would interfere with his regular religious practices; however, he did not attest that his Church has stopped burning incense or intends to stop burning incense based on the ordinance when he executed his affidavit on September 14, 2005.

hood that they will succeed on the merits. Therefore, the Court will not enjoin the ordinance based on Plaintiffs' First Amendment challenges to it.

## Overbreadth

■■■■■ Plaintiffs challenge the ordinance as unconstitutionally overbroad. The overbreadth doctrine applies primarily in the First Amendment context to allow facial challenges to laws that may chill free speech rights. The overbreadth doctrine is "strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). More recently the United States Supreme Court has indicated that "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (overturning state supreme court's application of the overbreadth doctrine to invalidate a housing authority trespassing policy and noting that as-applied litigation could remedy any future violations of the First Amendment that might result from applications of the policy).

■■■■■ Plaintiffs have not established that the ordinance is specifically addressed to speech or conduct necessarily associated with speech. In fact, several federal courts, including this one, have expressly ruled that the act of smoking is not generally considered speech, and thus, is not itself protected under the First Amendment. *See, e.g., NYC C.L.A.S.H., Inc., v. City of New York*, 315 F.Supp.2d 461, 476 (S.D.N.Y.2004); *Rohde v. City of Austin*, 124 Fed. Appx. 246 (5th Cir.2005). Because this Court has rejected Plaintiffs' First Amendment challenges to the ordinance, the Court does not find that Plaintiffs are substantially likely to succeed on their overbreadth challenge. This is the type of claim the courts have held best addressed in the course of criminal proceedings on an as-applied basis. Therefore, the Court will not enjoin the ordinance based on the overbreadth challenge.

## Enforcement: Fines

■■■■■ The ordinance provides two penalties for violations: (1) a Class C misdemeanor punishable by a fine not to exceed $2000; and (2) the suspension or revocation of an operator's permit or license. Austin City Code § 10–6–11.[8] The Plaintiffs seek to invalidate § 10–6–1(A) on the basis that the penalty of a fine up to $2000 violates Texas Penal Code § 6.02.[9] The

---

8. The full section states:

(A) A person who violates the provisions of this chapter commits a Class C misdemeanor, punishable under Section 1–1–99 (*Offenses; General Penalty*) by a fine not to exceed $2,000. A culpable mental state is not required for a violation of this chapter, and need not be proved.

(B) The city manager may suspend or revoke a permit or license issued to the operator of a public place or workplace where a violation of this chapter occurs.

(C) Each day an offense occurs is a separate violation.

Austin City Code § 10–6–11.

9. Section 6.02 reads as follows:

(a) Except as provided in Subsection (b), a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

City defends this section claiming that the conflict between the Texas Penal Code and the ordinance can be easily resolved if the City requests a fine of $500 or less or alleges a culpable mental state of recklessness or higher criminal intent in its criminal complaint. Def.'s Resp. Pls.' Req. TRO at 19. The conflict between the ordinance and the Texas Penal Code arises from the recent addition of § 6.02(f) which took effect on September 1, 2005, the same day the ordinance took effect. Section 6.02(f) changed the law to limit the fine for a violation of a city ordinance that dispenses with a culpable mental state requirement to a maximum of $500. TEX. PEN. CODE § 6.02(f).[10]

 It is clear to this Court, and the City has expressly agreed both in its pleadings and at the hearing, that the City cannot legally issue fines exceeding $500 under the ordinance unless it alleges and proves a culpable mental state for the violation. Although the Plaintiffs would have the Court strike either the ordinance in its entirety, or at least all of § 10–6–11(A) because of this conflict, the Court is bound by state law to find the ordinance unenforceable only to the extent that it conflicts with state law. See Dallas Merchant's & Concessionaire's Assoc. v. City of Dallas, 852 S.W.2d 489, 491 (Tex.1993); City of Brookside Village v. Comeau, 633

S.W.2d 790, 796 (Tex.1982). "[A] general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." City of Beaumont v. Fall, 116 Tex. 314, 291 S.W. 202, 206 (1927). Therefore, the Court adopts the City's interpretation that the ordinance can be legally enforced under § 10–6–11(A) without allegation or proof of any culpable mental state so long as the City requests a maximum fine of $500.

All of this has been a roundabout way of saying that Plaintiffs, as the City admits, are substantially likely to succeed on the merits, at least in part, on their challenge to the $2000 maximum penalty posed under § 10–6–11(A). Because the Court finds that Plaintiffs have proven the factors necessary for the Court to grant a preliminary injunction as to the partial invalidity of § 10–6–11(A), the Court will enjoin the City from imposing any fine under § 10–6–11(A) that exceeds $500, the legal limit provided by Texas Penal Code § 6.02(f).

### Enforcement: Permits & Licenses

 Austin City Code § 10–6–11(B) provides that "[t]he city manager may suspend or revoke a permit or license issued to the operator of a public place or workplace where a violation of this chapter

(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b), intent, knowledge, or recklessness suffices to establish criminal responsibility.
(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:
(1) intentional; (2) knowing; (3) reckless; (4) criminal negligence.
(e) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged.
(f) An offense defined by municipal ordinance or by order of a county commissioners court may not dispense with the re-

quirement of a culpable mental state if the offense is punishable by a fine exceeding the amount authorized by Section 12.23. TEX. PEN.CODE ANN. § 6.02.
 Section 12.23 limits the fine for a Class C misdemeanor to no more than $500. TEX. PEN.CODE § 12.23.

10. When the ordinance was drafted it was no doubt drafted in accordance with Texas Local Government Code § 54.001 which authorizes a fine or penalty of up to $2,000 for a violation of a city ordinance that governs public health and sanitation. TEX. LOC. GOVT.CODE § 54.001.

occurs."[11] The Due Process Clause of the Fourteenth Amendment admonishes that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Looking at the plain language of the ordinance, the Court finds no provision therein for notice, an opportunity to be heard, or any judicial review of the city manager's decision to suspend or revoke a city permit or license. Because a permit or license may be a constitutionally protected property right, this Court enjoins the City of Austin from suspending or revoking any city permits or licenses without allowing for expeditious judicial review. *See, e.g., 4330 Richmond Avenue v. City of Houston,* No. Civ. A. 91–0665, 1997 WL 1403893, at *1, 16 (S.D.Tex. July 17, 1997) (enjoining City of Houston from suspending a sexually oriented business permit pursuant to challenged ordinance without allowing for judicial review).

**Remaining Factors for Issuance of Injunctive Relief**

Although Plaintiffs' motion for preliminary injunction can generally be decided based on their likelihood of success on the merits, the Court will briefly address the remaining factors that bear upon injunctive relief.

The second factor, as mentioned above, is whether there is a substantial threat of irreparable harm if the injunction is not granted. To demonstrate an injury will be irreparable, a plaintiff must demonstrate the harm cannot be undone by an award of money damages. *See Deerfield Med. Ctr. v. City of Deerfield Beach,* 661 F.2d 328, 338 (5th Cir.1981). Plaintiffs ask the Court to presume irreparable harm when analyzing the financial impact the ordinance has had on their businesses so far and the potential that compliance with the ordinance will cause them such financial hardship that they will go out of business before a ruling on their declaratory judgment. The Court acknowledges that some businesses and their employees are suffering decreased business and revenues as a result of the smoking ordinance, and the Court is sympathetic to their losses. However, the mere showing of some decrease in revenue is not the kind of irreparable harm that the grant of a preliminary injunction may rest upon.

Although several plaintiffs testified at the hearing that their revenues have dropped since the ordinance took effect, none unequivocally stated that they were imminently likely to go out of business or declare bankruptcy. In addition, with so little financial data available from September 1, 2005 until the date of the hearing, it is difficult for this Court to conclude that any loss of revenue was directly correlated to the smoking ban or would be lasting and long term.[12] The evidence simply does not convince the Court that the Plaintiffs are likely to suffer irreparable harm absent the grant of an injunction. Thus, Plaintiffs have not established by a "clear showing" they are likely to suffer irreparable harm.

---

**11.** The City stipulated at the hearing that the only type of permits or licenses the City Manager has authority to suspend are those issued by the City of Austin.

**12.** The Court heard testimony from Dr. Philip Huang, the Chief of the Bureau of Chronic Disease and Tobacco Prevention for the Texas Department of State Health Services, that the minimum amount of time to gather data on the financial impact of a smoking ordinance he recommended would be one year following implementation of the ordinance. *See* Def's Ex. 5, Centers for Disease Control and Prevention, *Impact of a Smoking Ban on Restaurant and Bar Revenues—El Paso, Texas, 2002;* Def.'s Ex. 4 Prelim. Inj. Hrg.

Even if the plaintiffs could show that they are likely to experience irreparable injury, this is but one factor in the Court's analysis and it cannot alone support a court's granting of the extraordinary preliminary injunction remedy. As the Court stated at the hearing, just because an ordinance negatively impacts a business's revenue, does not mean that the ordinance is unlawful or can be enjoined by the Court.[13]

■ The Court is also unconvinced that the threatened injury to Plaintiffs outweighs the injury to the City of enjoining the ordinance. There has been no clear showing by Plaintiffs that the threatened injury of loss of business income outweighs the injury to the City and the citizens of Austin who enacted the ordinance. The City would be injured by enjoining the enforcement of the ordinance because such an injunction would interfere with the City's rational exercise of its police powers and its prosecutorial discretion. Enjoining the entire ordinance may cause confusion among Austin business owners who have been complying with the ordinance, and enjoining the entire ordinance would harm the citizens of Austin who initiated and approved it by taking away the health benefits of the ordinance and stripping the citizens of their legislative authority.

■ Finally, the Plaintiffs have not clearly shown that enjoining the entire ordinance does not disserve the public interest. The public has a substantial interest in the enforcement of ordinances that protect the public health. *Taverns for Tots, Inc. v. City of Toledo*, 307 F.Supp.2d 933, 946 (N.D.Ohio 2004). Likewise, the public has an interest in ensuring that bar and restaurant owners who are not participating in legal challenges to the smoking ordi-

nance and who seek to comply with the ordinance are encouraged in their efforts to comply. *Id.* The plaintiffs have not offered much, if any, evidence to prove that enjoining the smoking ban would not disserve the public interest. Accordingly, the Court finds Plaintiffs have not satisfied their burden regarding the public interest factor.

## Conclusion

After examining Plaintiffs' claims, the Court finds that there are only two grounds upon which Plaintiffs have clearly shown they are substantially likely to prevail upon the merits: the challenge to the enforcement provision regarding fines and the enforcement provision regarding permits and licenses. As to these provisions, the Court will enjoin the City in its enforcement proceedings as specified above. Plaintiffs are not entitled to a preliminary injunction on the rest of their claims because they have not, through the evidence presented, made a clear showing they are substantially likely to prevail on the merits or will suffer irreparable harm if an injunction is not granted. Finally, the balance of equities does not clearly weigh in Plaintiffs' favor. Accordingly, the Court will not enjoin the ordinance as a whole today, but will only enjoin two parts of the enforcement provisions.

In accordance with the foregoing:

IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction [# 31] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the City of Austin is hereby enjoined from: (1) suspending or revoking any city permits or licenses pursuant to Austin City Code

---

**13.** Indeed it would be within the power of the City of Austin to enact an ordinance banning alcohol sales in Austin entirely, and this would doubtless lead to many businesses closing.

§ 10–6–11(B) without allowing for expeditious judicial review; and (2) imposing any fine pursuant to Austin City Code § 10–6–11(A) that violates Texas Penal Code § 6.02(f) by exceeding $500.

IT IS FURTHER ORDERED that the City may enforce the remainder of the ordinance as written and interpreted by the City, until further order of the Court.

IT IS FINALLY ORDERED that the preliminary injunctions granted above shall remain in effect until further order of the Court.