# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 23, 2024

Lyle W. Cayce
Clerk

No. 23-50706

SO Apartments, L.L.C.; Station at Elm Creek, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

City of San Antonio, Texas,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-992

Before Higginbotham, Stewart, and Higginson, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

SO Apartments, LLC and Elm Creek, LLC (the "Complexes") appeal the district court's denial of a preliminary injunction, and present a facial challenge to the City of San Antonio's recent enactment of its Proactive Apartment Inspection Program ("PAIP"). Finding that the district court did not abuse its discretion in denying this relief, we AFFIRM.

## I.

In light of a documented pattern of property maintenance code violations, the City of San Antonio created the Proactive Apartment

No. 23-50706

Inspection Program.[1] The PAIP's stated purpose is to address property owners who are not maintaining their property to minimum building Code standards and who have allowed their property to develop "health, life, welfare and safety problems."[2]

The PAIP applies to multifamily apartment complexes with five or more units, enabling the City to identify and monitor apartment complexes that have a documented disregard for Code violations.[3] The City achieves this identification by requiring apartment complexes to enroll in the PAIP when they receive three or more Code citations over a six-month period that they fail to cure.[4] Alleged Code violators receive notice of the purported Code violation and have an opportunity to appeal both the Code citation and the concomitant "program point" that would render them subject to enrollment in the PAIP.[5] Enrolled apartment complexes are assessed a $100 per-unit, per-year fee to fund the inspection program, which permits the City's designated Code enforcers to conduct at least monthly inspections of the enrolled complexes.[6]

An enrolled apartment complex "graduates" the PAIP by curing the original violations and obtaining no more than two additional program points in a six-month period after enrollment.[7] According to the City, since the

---

[1] SAN ANTONIO, TEX., CODE ch. 6, art. V (2023) [hereinafter CODE].

[2] CODE § 6-66(a).

[3] *Id.*

[4] *Id.* § 6-68(a)(1).

[5] *Id.* §§ 6-52, 107.2; 6-67(e). Alleged Code violators may pursue these appeals independently. In other words, even if a property owner fails to overturn a program point on appeal, he may still appeal the underlying citation through the judicial review process.

[6] *Id.* §§ 6-68(c); 6-71(a).

[7] *Id.* § 6-72(a).

2

launch of the PAIP in April 2023, "of the 1,227 apartment complexes inspected in the City, only 19 are currently enrolled in the PAIP."[8] Appellants, SO Apartments and Elm Creek Apartments, are two of these nineteen complexes.

## II.

On April 19, 2023, SO Apartments received four notices of violations and associated program points. On May 5, 2023, Elm Creek Apartments received twelve notices of violations and related points. After failing to cure the identified violations, the Complexes were fined for each violation, totaling $1,200 for SO Apartments and $3,600 for Elm Creek Apartments. The Complexes unsuccessfully disputed their citations or program points, or both, resulting in their required enrollment in the PAIP. SO Apartments owes a $12,500 program fee and Elm Creek Apartments owes a $32,400 program fee. Although both apartment complexes are enrolled in the PAIP, neither have paid the program fee.

On July 31, 2023, the Complexes filed suit against the City, challenging the constitutionality of the PAIP on three grounds. First, they argued that the PAIP violated the Fourth Amendment because it authorized frequent and "warrantless inspections" of private property. Second, they posited that the PAIP's $100 per unit administrative fee violates the Eighth Amendment's prohibition against excessive fines. Lastly, they contended that the PAIP denied them the procedural and substantive due process protections of the Fourteenth Amendment.

---

[8] As of June 2024, twenty-five complexes are enrolled. *See Proactive Apartment Inspections Program Activity Report*, CITY OF SAN ANTONIO, https://perma.cc/L8KC-YMZW.

No. 23-50706

SO Apartments and Elm Creek Apartments moved for a preliminary injunction and, after a hearing, the district court denied their request, finding they failed to show any of the four requisites for a preliminary injunction. The Complexes filed a timely interlocutory appeal, bringing to this Court the same constitutional challenges made to the PAIP.

**III.**

The granting of a preliminary injunction is an "extraordinary and drastic remedy."[9] The decision to "deny a preliminary injunction lies within the discretion of the district court and may be reversed on appeal only by a showing of abuse of discretion."[10] This Court "will not find an abuse of discretion unless the district court's factual findings are clearly erroneous or incorrect legal standards were applied."[11] To obtain a preliminary injunction, a movant must show:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.[12]

As in this case, when the Government opposes an injunction, the third and fourth factors "merge."[13] Moreover, "[a] facial challenge to a legislative

---

[9] *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), *cert. denied sub nom. Anibowei v. Mayorkas*, 144 S. Ct. 551 (2024) (quoting *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).

[10] *Id.* (quoting *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984)).

[11] *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Latvian Shipping Co. v. Baltic Shipping Co.*, 99 F.3d 690, 692 (5th Cir. 1996)).

[12] *Anibowei*, 70 F.4th at 902 (quoting *Canal Auth.*, 489 F.2d at 572).

[13] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

No. 23-50706

Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."[14]

## IV.

We hold that the district court did not abuse its discretion in denying the requested preliminary injunction, as the Complexes have failed to show that they would likely succeed on the merits of their claims.

## A.

The Fourth Amendment applies to searches for administrative purposes.[15] Whether a search is reasonable under the Fourth Amendment "is predominantly an objective inquiry."[16] A warrantless search is presumed unreasonable, absent certain exceptions.[17]

The Complexes first argue that the PAIP allows for "frequent, unfettered warrantless searches" by public inspectors without a warrant, a denial of the protections of the Fourth Amendment. The Complexes contend the PAIP is unreasonable under the Fourth Amendment because the PAIP does not reference any warrant requirements but requires property owners to open their complexes for inspection.

---

[14] *United States. v. Salerno*, 481 U.S. 739, 745 (1987).

[15] *See Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 531–34 (1967) (holding that the Fourth Amendment requires a warrant to enter a home for the purpose of inspecting for violations of municipal fire, health, and housing codes).

[16] *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 47 (2000)).

[17] *Mexican Gulf Fishing Co. v. U.S. Dep't of Com.*, 60 F.4th 956, 967 (5th Cir. 2023) (citing *United States v. Riley*, 968 F.2d 422, 424 (5th Cir. 1992)).

No. 23-50706

Although the Complexes are correct that the Fourth Amendment applies to the City's inspectors, the PAIP on its face does not authorize or mandate warrantless searches. Section 6-71, titled "Monitoring, inspection, and condition standard," does not state that city officials can conduct a search without first obtaining a warrant.[18] Indeed, when considering the Ordinance in the context of the entire "Buildings" section of the City Code, it becomes clear that warrants *are* contemplated in the building inspection process.[19] As the City explains, the "PAIP does not exist in a legal vacuum" and, as such, it does not need to reiterate the protections afforded by the Fourth Amendment—the PAIP does "not attempt to subvert the always-applicable warrant protections of the Fourth Amendment."[20] For these reasons, we hold that the district court did not abuse its discretion in concluding that the Complexes have failed to show that they were likely to succeed on their Fourth Amendment claim.

**B.**

The Complexes argue that the registration fees for the PAIP are unconstitutional under the Eighth Amendment as a disproportionate "punishment" because the fees apply only to apartment complex owners

---

[18] CODE § 6-71.

[19] For example, both Section 6-52 (which is part of the "Minimum Property Maintenance Code" for "Buildings") and Chapter 10 of the Code (which builds on the requirements identified in Chapter 6 for "Buildings") incorporate by reference standard Fourth Amendment warrant requirements, which cabin the City inspectors' ability to enter an apartment complex without a warrant. *See, e.g.*, CODE § 6-52, 104.3 ("The code official is authorized to enter the structure or premises at reasonable times to inspect *subject to legal restrictions*." (emphasis added)); *id.* § 10-5(g) ("If entry is refused, the building official has recourse to the remedies *provided by law* to secure entry." (emphasis added)).

[20] Moreover, the City acknowledged at oral argument that it "would have had to obtain an administrative warrant if [the Complexes] had not consented." Oral Argument at 19:10-19:23.

with multiple violations and not to apartment complex owners on "good terms with a code official." They also argue that the registration fees are excessive because they depend on the number of dwelling units rather than the purported violations.[21]

The Excessive Fines Clause of the Eighth Amendment applies only when "the statutory fees at issue constitute punishment."[22] A payment "compensating the Government for a loss" is distinct from a fine, as it instead serves a "remedial purpose."[23] Even if a fee is punishment, however, it would only run counter to the Eighth Amendment "if it is grossly disproportional to the gravity of [the] offense."[24]

The district court found that the registration fees are not a form of punishment. Their purpose is to cover the administrative costs associated with the additional monitoring of a property once it is enrolled in the PAIP. We agree. The manner in which the fees are assessed lends further credence to this point: The enrollment fee is based on the number of units in a property and is directly commensurate to the additional work the City must undertake to monitor the rehabilitation of PAIP complexes. Moreover, even if the registration fees were perceived as a form of punishment, they are directly proportional to the anticipated cost of monitoring noncompliant properties relative to their comparative sizes—they are not "excessive."

---

[21] As an example, the Complexes posit that "[a] smaller apartment complex could have egregious violations but only pay $500.00 (if the complex only had five units) whereas a neighboring apartment complex with 500 units would be forced to pay $50,000.00 for less egregious and potentially vague violations." *Id.*

[22] *Broussard v. Par. of Orleans*, 318 F.3d 644, 652 (5th Cir. 2003).

[23] *United States v. Bajakajian*, 524 U.S. 321, 329 (1998).

[24] *Id.* at 334.

## C.

Procedural "[d]ue process 'requires only notice that is both adequate to apprise a party of the pendency of an action affecting its rights and timely enough to allow the party to present its objections.'"[25] This inquiry requires a balancing between the private and governmental interests concerned.[26] Specifically, courts must consider three factors in this balancing analysis: (1) "the private interest that will be affected by the official action"; (2) "'the risk of an erroneous deprivation' under the procedures provided"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that . . . additional or substitute procedural requirements would entail."[27]

The Complexes identify two property interests of which they have been allegedly deprived without due process: (1) their right to freely transfer their property in light of Code § 6-52, 107.6; and (2) the $100-per-unit fee they were charged when enrolled in the PAIP. Both arguments, however, likely fail on the merits.

As to the restriction on the transfer of property, the Complexes' argument fails at the first step in the balancing analysis because Code § 6-52, 107.6 does not deprive the Complexes of their right to sell their property. As the City explains, that provision of the Code does not deprive anyone of their right to sell their property; instead, it requires *either* code compliance before a sale or notification to the buyer that the property is noncompliant with the

---

[25] *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 521 (5th Cir. 1998) (quoting *In re Christopher*, 28 F.3d 512, 519 (5th Cir. 1994)).

[26] *Bevis v. City of New Orleans*, 686 F.3d 277, 280 (5th Cir. 2012) ("The constitutional adequacy of the Ordinance's procedures is assessed by balancing the private and governmental interests concerned.").

[27] *Id.* at 280–81 (cleaned up) (citations omitted).

No. 23-50706

City's maintenance codes.[28] Under this provision, the City has no authority to stop a property sale—at most, the City may impose a fine for noncompliance (which the Complexes do not challenge on due process grounds).

The Complexes' second argument—that the PAIP improperly deprives them of their $100-per-unit registration fees without due process—fails to persuade. Although the Complexes correctly identify the $100 registration fee as a property interest, the "risk of an erroneous deprivation" is low under the PAIP's existing procedures.[29] Under the PAIP, an apartment complex owner *must* receive notice of a Code violation before a citation can issue.[30] Only if the property owner fails to cure a violation is a citation, and program point, issued.[31] Importantly, the program point is not applied until (1) the ten-day administrative appeal period expires if the owner fails to

---

[28] CODE § 6-52, 107.6 reads:

It shall be unlawful for the owner of any dwelling unit or structure who has received a compliance order or upon whom a notice of violation has been served to sell, transfer, mortgage, lease or otherwise dispose of such dwelling unit or structure to another until the provisions of the compliance order or notice of violation have been complied with, or until such owner shall first furnish the grantee, transferee, mortgagee or lessee a true copy of any compliance order or notice of violation issued by the code official and shall furnish to the code official a signed and notarized statement from the grantee, transferee, mortgagee or lessee, acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation.

[29] *Bevis*, 686 F.3d at 280 (citation omitted). As the City argues, "[t]he very fact that over 1,000 apartment complexes have avoided receiving three program points—and therefore avoided required enrollment in the PAIP—speaks to the exacting nature of the program point process."

[30] CODE § 6-67(a)(1).

[31] *Id.* § 6-67(d)(1), (2).

appeal; or (2) if there is an appeal, then only after the code official has made a finding against the owner and the property.[32] Additionally, a property manager may appeal the issuance of a program point separately and concurrently from the underlying citation. In other words, a property owner, even if the code official rules against them with respect to the program point, may still separately and concurrently appeal the underlying citation through the judicial review process.[33]

As to the third factor in the procedural due process balancing analysis, the City's and public's interests are weighty: The City is responding to a documented issue of improper housing conditions and is trying to improve the safe living conditions of those residents that ordinarily could not advocate for themselves. When balancing the private and governmental interests concerned, it is clear that the district court did not abuse its discretion in finding that the Complexes failed to establish a likelihood of success on either of its procedural due process claims.

## D.

The Complexes also present a substantive due process challenge. "A substantive due process violation is an 'action government officials may not take no matter what procedural protections accompany them.'"[34] Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"[35] The Complexes argue that the PAIP

---

[32] *Id.* § 6-67(d)(3).

[33] *Id.* § 6-67(e)(5).

[34] *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89-90 (5th Cir. 2011) (quoting *Augustine v. Doe*, 740 F.2d 322, 326 (5th Cir. 1984)).

[35] *Salerno*, 481 U.S. at 746 (internal citations omitted).

violates their substantive due process rights because it is "[1] facially vague and [2] as applied in that it . . . fails to give fair notice." We are not persuaded that the district court abused its discretion in finding that this claim would likely not succeed on the merits.

The Complexes' substantive due process claim likely fails on the merits because they failed to identify any conduct that so "shocks the conscience" that it would amount to a substantive due process violation.[36] A $100-per-unit fee, commensurate to the additional burdens placed on the City to administer the program, is not so egregious that it would interfere with rights "implicit in the concept of ordered liberty."[37]

The Complexes' second argument, which is best understood as a procedural, not substantive, vagueness challenge, also fails to persuade. The Complexes argue that the notices fail to provide sufficient notice. "Objections to vagueness under the Due Process Clause rest on the lack of notice and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk."[38] In this case, reasonable persons would read the violation notices and conclude that a failure to appeal the notices would lead to a citation or program point.

## V.

The Complexes have not only failed to show a likelihood of success on the merits, but they have also failed to establish (1) that they would suffer irreparable injury if the injunction were not granted and (2) that the

---

[36] *Id.*

[37] *Id.*

[38] *United States v. Clark*, 582 F.3d 607, 612–13 (5th Cir. 2009) (citing *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)).

threatened injury outweighs the threatened harm the injunction may do to the City and the public interest.

As to irreparable harm, the Complexes' claim is meritless. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."[39] However, the availability of monetary damages does not automatically mean that a remedy at law is always "adequate."[40] For example, if final relief may only be secured through "a multiplicity of actions," or if a "meaningful decision on the merits would be impossible without an injunction," then a preliminary injunction may be appropriate notwithstanding the availability of monetary damages.[41] "[T]he loss of constitutional freedoms for even minimal periods of time unquestionably constitutes irreparable injury."[42]

Monetary damages are available here—the Complexes could be compensated for the registration fees, citations, and any of their incurred compliance costs. Moreover, none of the special situations that might warrant a finding of irreparable harm notwithstanding the availability of monetary damages are present: The Complexes do not need to file a multiplicity of actions, nor is a review on the merits impossible without granting the preliminary injunction. Lastly, the Complexes' constitutional claims will likely fail on the merits, thus weaking their claim that they face an

---

[39] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (citing *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975)).

[40] *Id.*

[41] *Id.*

[42] *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (cleaned up).

untenable choice between exercising their constitutional rights and complying with the PAIP.

As to the balancing of harms between the Complexes and the City and its residents, we also hold that the Complexes have not met their burden. The potential harm to the Complexes is monetary in nature and thus reparable. On the other hand, an injunction would prevent the City from enforcing its police powers to protect the health, safety, and welfare of its residents in light of a documented pattern of Code violations. San Antonio residents have a significant interest in the enforcement of ordinances that protect the public health,[43] and the PAIP seeks to address critical issues such as "rotting balconies, cracked windows, . . . broken gutters[,] . . . and [] stairways in disrepair." Given the potential harm to the City's ability to exercise its police powers in light of a documented pattern of repeated housing violations, and the residents' interest in public health, we hold that the district court did not abuse its discretion in finding that the Complexes failed to meet their burden under the "merged" third and fourth preliminary injunction factors.

## VI.

The constitutional challenges under the Fourth, Eighth, and Fourteenth Amendments are likely to fail on the merits. SO Apartments and Elm Creek Apartments also failed to establish they would suffer irreparable harm. Moreover, the potential harm to the City and its residents is significant and weightier vis-à-vis the potential harm to the Complexes. One gentle reminder: from this distant perch, we are ill equipped to say more. The able state and federal district courts, sensitive to community demands, are at your

---

[43] *See Roark & Hardee L.P. v. City of Austin*, 394 F. Supp. 2d 911, 922 (W.D. Tex. 2005).

No. 23-50706

hand. We hold that the district court did not abuse its discretion in denying the preliminary injunction and AFFIRM the district court's order.